UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| DENNIS RAY CAPPS, | ) |  |
|---|---|---|
| Petitioner, | ) |  |
| vs. | ) | Case No. 1:14CV00144 AGF |
| UNITED STATES OF AMERICA, | ) |  |
| Respondent. | ) |  |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Dennis Ray Capps's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. On May 30, 2012, a jury convicted Petitioner of one count of possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Pursuant to an Information filed under 21 U.S.C. § 851, this Court sentenced Petitioner, as a person with two prior felony drug convictions, to the mandatory term of life in prison plus ten years supervised release. On June 11, 2013, the Eighth Circuit Court of Appeals affirmed the conviction and sentence.

Petitioner now moves to set aside his conviction and sentence, asserting that defense counsel provided ineffective assistance in (1) failing to convey plea offers to Petitioner; and (2) failing to handle effectively a pretrial motion to suppress evidence and statements. The Court appointed counsel to represent Petitioner, and on November 23, 2015, held an evidentiary hearing on Petitioner's claim of ineffective assistance of

counsel. Based on the entire record, and having had an opportunity to observe the demeanor of the witnesses at the hearing, Petitioner's motion shall be denied.

## BACKGROUND

### Criminal Proceedings

On July 28, 2011, a Missouri State Highway Patrol officer stopped Petitioner's car, having recognized the driver as Petitioner and knowing that Petitioner's license was suspended and that there was an active felony warrant for his arrest. Petitioner's wife was a passenger in the car. Following a discussion regarding consent to search, at which time the officer asserts Petitioner gave consent to search the car, the car was searched. A black bag with 165 grams of material containing 138 grams of actual methamphetamine was found under the hood of the vehicle. Both Petitioner and his wife were arrested and taken into custody. At the scene, both before and after being read his *Miranda* rights, Petitioner stated that the drugs were his and not his wife's. Petitioner reiterated this statement in a later interview. Petitioner's wife was not held. On October 20, 2011, Petitioner was indicted on one count of possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and punishable under 21 U.S.C. § 841(b)(1)(A)(iii). *United States v. Capps*, No. 1:11CR108 ("*U.S. v. Capps*").

On November 8, 2011, an experienced Assistant Federal Public Defender, Michael Skrien, entered his appearance on behalf of Petitioner. At 10:00 a.m. on that day, Petitioner pled not guilty to the charged crime.

Documents produced in connection with the habeas hearing show that at 4:03 p.m. that day, the government emailed Skrien a proposed plea agreement, with a cover email

stating, "This is going to be hard for Mr. Capps to swallow, however it appears that he is eligible for a mandatory life sentence." (ECF No. 18-1 at 1.) Skrien responded by email three minutes later, stating, "I was hoping to negotiate not filing enhancement, making him mandatory 20. Let me take a look at this and get back to you. I will definitely look into the mand life possibility." *Id*.

The draft plea stipulation forwarded by the prosecutor proposed that Petitioner would plead guilty to the offense as charged in exchange for the government not charging him with any additional crimes arising out of the facts underlying the charge. With respect to the Sentencing Guidelines, it recommended a base offense level of 34 (based on the amount of drugs involved) less three levels for Petitioner timely accepting responsibility. The offer stated that Petitioner's criminal history category would be determined in the presentence investigation report ("PSR"), and that the statutory maximum penalty Petitioner would face was life (plus ten years supervised release), with a statutory mandatory minimum of 20 years. *Id*. at 2-16. Petitioner had two prior felony drug convictions (based on guilty pleas on the same day more than ten years prior to the current offense). Under 21 U.S.C. § 841(b)(1)(A)(viii), the mandatory minimum sentence for the crime with which Petitioner was charged was ten years for a person with no prior felony convictions; 20 years for a person with one prior felony drug conviction; and life for a person with two or more prior felony drug convictions. Thus, by agreeing to stipulate to a mandatory minimum of 20 years, the government was agreeing that if Petitioner pled guilty, the government would file one, but not two, of his prior felony drug convictions for sentencing enhancement under § 841(b)(1)(A)(viii).

No plea agreement was reached, and on December 2, 2011, Petitioner filed a motion to suppress the evidence seized from the vehicle and incriminating statements Petitioner made. He contended that the officer did not have probable cause to stop his vehicle, and that the search of the vehicle was conducted without consent. An evidentiary hearing on the motion to suppress was held before a magistrate judge on December 28, 2011. The officer who stopped Petitioner's car testified that when he saw Petitioner's car drive by, he recognized Petitioner, whom he had arrested before, as the driver and knew that Petitioner's license had been suspended and that there was an active warrant out on him. Upon stopping the vehicle and "running the plates," the officer learned that the plates were from a different vehicle. Petitioner told the officer that he had the correct license plates in his trunk, and invited him to look in the trunk. The officer testified that although Petitioner initially agreed only to a search of the trunk, after some discussion, Petitioner gave consent for the search of the entire vehicle. During the search, the officers found the methamphetamine that formed the basis of the crime of conviction, in a sock inside a cosmetic bag that was under the hood of the car. The officer advised Petitioner what he had found, and Petitioner responded that the drugs were his, and not his wife's. Petitioner was then advised of his *Miranda* rights, after which Petitioner reiterated the same statement about the drugs.

Skrien cross-examined the officer on how he was able to identify Petitioner as the driver of the vehicle, in that the windows of the vehicle were tinted. The officer testified that he first saw Petitioner through the untinted front windshield. Skien also cross-examined the officer based on a videotape of the encounter that reflected that Petitioner

did not initially consent to a search of anywhere other than the trunk. Petitioner did not testify at the suppression hearing.

On February 24, 2012, the magistrate judge filed a Report and Recommendation ("R&R), recommending denial of the motion to suppress. The magistrate judge found that Petitioner had voluntarily consented to a search of the entire vehicle. He also found that, even if Petitioner had not consented, there was no Fourth Amendment violation because state troopers inevitably would have discovered the methamphetamine as part of an inventory search. Lastly, the magistrate judge found that Petitioner's initial statement about the drugs was volunteered, and not the result of interrogation, and that his later admissions were voluntarily made after the administration of *Miranda* warnings.

Documents produced in connection with the habeas evidentiary hearing include an email exchange dated March 1, 2012, between Skrien and the prosecutor in which the prosecutor proposed a deal for 200 months along with a waiver of "all . . . rights." Skrien responded that he was thinking along the lines of 180 months. (Govt. Ex. A, ECF No. 29-4.)

On March 9, 2012, Skrien filed summary objections to the R&R for the reasons set out within his previously filed motion to suppress. (*U.S. v. Capps*, ECF No. 39.)

On March 15, 2012, Skrien filed a motion to withdraw as counsel, stating as follows:

> Counsel has had great difficulty communicating with Defendant, and believes Defendant does not trust counsel whatsoever. This distrust has grown and become a complete barrier to adequate representation and the attorney client relationship has been irretrievably broken.

*Id*., ECF No. 40. That same day, the magistrate judge granted the motion to withdraw, and appointed Patrick McMenamin, also an experienced criminal defense attorney, as new counsel for Petitioner. On April 30, 2012, upon de novo review, including a review of the testimony and the videotape of the incident, this Court, adopted the Magistrate Judge's R&R and denied Petitioner's motion to suppress. After granting a motion by Petitioner to continue the trial, the case was set for a jury trial on May 29, 2012.

On May 8, 2012, the government filed a notice of sentence enhancement pursuant to 21 U.S.C. § 851, listing Petitioner's two prior felony drug convictions, which triggered the mandatory minimum sentence of life imprisonment under § 841(b)(1)(A)(viii).

At the final pretrial conference held on Friday, May 25, 2012, with Petitioner present, the Court inquired as to whether there were any plea discussions or whether the parties anticipated going to trial the following Tuesday. McMenamin stated, "I believe we're going to trial on Tuesday, Your Honor." *Id*., ECF No. 103, at 3. The Government was allowed to introduce the contested evidence at trial, and as noted above, the jury found Petitioner guilty of possession with intent to distribute at least 50 grams of methamphetamine.

The PSR indicated that Petitioner was subject to a mandatory sentence of life imprisonment based upon his criminal history as set out in the notice of enhancement. On September 13, 2012, Petitioner sent a letter to the Court asking for leniency, wherein he stated, "I didn't want to go to trial but there never was a plea agreement in writing on the table." *Id*., ECF No. 77. In his sentencing memorandum, Petitioner requested a sentence within the Guidelines range, which he agreed was 235 to 293 months, and

6

argued that a mandatory life sentence without parole for this offense violated the Eighth Amendment bar against cruel and unusual punishment.  *Id.*, ECF No. 78.

At the start of the sentencing hearing, conducted on January 22, 2013, Petitioner acknowledged that he was aware that the government had made him an offer that day of a sentence of 25 years in exchange for his waiving his rights to an appeal.  Petitioner stated that he did not think it was worth giving up his appeal rights for 25 years.  *Id*., ECF No. 105, at 7-10.  Later at sentencing, Petitioner stated as follows:

> I've seen people go to court, and once they get through their evidentiary hearing and they see what evidence is held against them, they're given a plea offer or a plea agreement or the Government comes to them with a plea or an agreement of some sort.  And since I did not cooperate and didn't want to incriminate anyone else in this, I never received that opportunity to make a plea.  That's why I was in trial in the first place.

*Id*. at 45.  The government stated that it had made plea offers prior to trial, and that they were not contingent on Petitioner's cooperation, but that the offers were rejected.  *Id*. at 47.  Petitioner stated that he had been told by McMenamin that there was no plea offer from the government.  Though voicing disapproval that the conviction carried a mandatory minimum sentence of life imprisonment (*id.* at ECF No. 53-55), the Court overruled Petitioner's argument under the Eighth Amendment and sentenced Petitioner to the mandatory minimum sentence of life, plus ten years of supervised release.

On direct appeal, Petitioner argued that the court had erred in denying his motion to suppress, and that the imposition of a life sentence for his third felony drug offense was grossly disproportionate to the crime, and as such was unconstitutional.  The Eighth Circuit rejected both arguments, and affirmed Petitioners conviction and sentence.

7

*United States v. Capps*, 716 F.3d 494, 496 (8th Cir. 2013). The appellate court held that although Petitioner argued that his two prior convictions for methamphetamine offenses that resulted in his life sentence enhancement should have been considered only one prior offense, as they were committed only one month apart and he pled guilty to both offenses on same day more than 10 years before his current offense, Petitioner's continued criminal conduct involving methamphetamine was the type of recidivism that Congress attempted to target by the statutory mandatory life sentence.

## **Motion to Vacate and Evidentiary Hearing**

Petitioner's first claim for federal habeas relief is that his defense attorneys were ineffective in failing to convey any plea offers to him. Specifically, Petitioner asserts that he discovered for the first time at his sentencing on January 22, 2013, that a plea offered had been extended to him that did not require him to cooperate with the government. ECF No. 1-2, at 3. He alleges that after losing the motion to suppress, he did not want to go to trial, knowing that he did not have a strong defense. *Id.* Further, he asserts that "[h]ad either of the Petitoner's defense attorneys communicated the plea deal that Government mentioned during sentencing [which referenced a plea not requiring cooperation], the Petitioner would have accepted the offer. Surely, the offer would have resulted in a lesser sentence than the Petitioner's current sentence of life in prison, followed by 10 years of supervision." *Id.* at 6.

Petitioner's second claim of ineffective assistance of counsel is that Skrien did not adequately litigate the motion to suppress. Petitioner maintains that Skrien should have cross-examined the officer who made the traffic stop on how he knew that Petitioner's

8

license was suspended; and obtained still photos of Petitioner's vehicle, which would have supported Petitioner's position that his windows were too dark to identify anyone inside the vehicle as it traveled on the highway. Further, Petitioner maintains that Skrien should have investigated the officer's motivation for the traffic stop by requesting recorded transmissions between him and the Highway Patrol dispatcher prior to the stop. Petitioner argues that had Skrien cross-examined the officer on the precipitating cause of the traffic stop, a reasonable probability exists that the motion to suppress would have been granted. Lastly, Petitioner notes that the government never presented any proof by means of Department of Motor Vehicle records that Petitioner's license was suspended.

The Court held an evidentiary hearing on Petitioner's first ground of ineffective assistance of counsel. Skrien testified to receiving the written proposed plea agreement on November 8, 2011. As discussed above, that agreement provided for a mandatory minimum sentence of twenty years, which was not contingent on any cooperation by Petitioner. At the evidentiary hearing, Skrien testified that he did not recall providing Petitioner with a copy of the typed November 8, 2011 plea offer. Indeed, the copy of the document in McMenamin's filed has a handwritten note from Skrien to McMenamin stating that Skrien never showed it to Petitioner, noting "never got this far." Hearing Ex. 1, ECF No. 29. Skrien testified, however, that he was sure that he told Petitioner before filing the motion to suppress that the government offered 20 years, and also certain he advised Petitioner that otherwise, he faced a life sentence. Skrien discussed with him that if he did not want to accept the offer, he could file pretrial motions. But Petitioner got

9

very angry and told him that 20 years was not acceptable. Skrien testified Petitioner did not want any part of the plea offer, and wanted to file motions to suppress.

Skrien further testified to the following. After the Magistrate Judge issued the R&R denying Petitioner's motions, the prosecutor inquired about Petitioner's willingness to plead guilty. By email dated March 1, 2012, at 12:20 p.m., the prosecutor offered 200 months, that was not contingent on any cooperation. Specifically, it stated,

> I had a long talk with Larry [Ferrell] about Mr. Capps. He is going to be okay with some kind of deal that will allow him to avoid getting 240 month sentence presuming he waives all his rights for eternity, including but not limited to future sentence reduction under 3583, and the rights to the made for tv movie.[1]
>
> How does a nice juicy 200 months off [sic] sound? That's almost four years less than he will get otherwise.

Govt. Ex A, ECF No. 29-4.

Skrien responded that same afternoon, stating, "I was thinking more along the lines of 180 (same as mand min for ACCA), but 200 and 180 are not entirely worlds apart. I'll get with Mr. C and see what his plans are." After expressing the need to clarify the reference to § 3583, Skrien stated that he would speak with Petitioner and "see if there is something close to a meeting of the minds." He indicated he would get back with the prosecutor next week, noting he would be out the next day and Monday. *Id.*

On approximately March 15, 2012, Skrien met with Petitioner and raised the possibility of a plea offer for 180 to 200 months, but Petitioner again became angry and refused. Skrien tried to suggest a plea for 180 months, but Petitioner "did not want any

---

[1] The witnesses testified that the comment about rights to the made for tv movie was intended and viewed as a joke.

part of that either." Skrien did discuss with Petitioner the amount of time he was facing if he pleaded guilty, and what he was facing if he did not. Skrien testified that his discussions with Petitioner regarding a plea focused on the number of years Petitioner would have to serve; Skrien did not recall discussing with Petitioner whether Petitioner would have to cooperate with the government for a 20 year offer. But Skrien clearly did not think that the 200 month offer was contingent on cooperation. Petitioner told Skrein he knew others with worse records who got better deals, and insisted he only possessed the methamphetamine and did not intend to distribute it. Skrien was unable to discuss the proposed plea with Petitioner further, as Petitioner made threats, and stood up and began yelling for someone to take him out of the room. Petitioner also said that he wanted a different lawyer. Skrien thereafter filed his motion to withdraw.

As noted above, on March 15, 2012, McMenamin was appointed as substitute counsel for Petitioner. At the habeas evidentiary hearing, he testified that he met with Petitioner several times that month. McMenamin stated that he did not give Petitioner a copy of the November 8, 2011 offer, which he had assumed Petitioner and Skrien had addressed. But the prosecutor and McMenamin had also had several email exchanges, and the prosecutor had also conveyed a 20-year plea offer to McMenamin, which he then communicated to Petitioner. He testified that when he told Petitioner that the government had made an offer for 20 years, Petitioner became agitated, expressing his belief that 20 years was more than he deserved. In April, 2012, McMenamin hypothetically discussed a sentence of 17-18 years, but Petitioner refused, "aggressively." McMenamin testified

that Petitioner was fixated on a sentence of seven, eight, or nine years, insisting he only possessed the methamphetamine for personal use.

McMenamin further testified that when he met with Petitioner after seeing the government's draft of its notice of sentence enhancement, he told Petitioner that without a plea agreement, he was facing a life sentence. According to McMenamin, Petitioner responded that "20 years is like life." McMenamin testified that he tried to impart to Petitioner, who was then 39 years old, the significant difference between a 20-year sentence and a life sentence, but his efforts were "truncated" by Petitioner's agitation whenever a 20-year sentence, or a 17- or 18- year sentence, was mentioned. Rather, Petitioner expressed his willingness to plead guilty in exchange for a sentence of seven to nine years. McMenamin testified that he tried numerous times to persuade Petitioner to accept the 20-year offer and never suggested that such an offer would require Petitioner to cooperate with the government. But due to Petitioner's agitation at the mention of a 20-year sentence, McMenamin "could not get very far." McMenamin testified that on other aspects of the case, such as trial strategy, he had no difficulty communicating with Petitioner. McMenamin acknowledged that a very small percentage of his time with Petitioner was spent on discussing a plea. After the § 851 notice was filed, the government essentially revoked the prior offers.

Petitioner testified at the evidentiary hearing that Skrien advised him that the only way to get a reduced sentence was to cooperate, but Petitioner made it clear to Skrien that he refused to do so because it would put his family in jeopardy. He denied that Skrien ever told him about a 20-year plea offer. Petitioner testified that after McMenamin

12

entered the case, Petitioner asked him repeatedly if there was any offer – for 18 years – for 20 years – but McMenamin told him there was no offer on the table. Petitioner did not recall saying that "20 years was like life," but testified that if he did say that, he said it in anger. He testified that once the motion to suppress was denied, he knew he could not prevail at trial, and had he known that he could have pled guilty (without cooperation) to a 20-year sentence, he would have taken the offer. He also testified that when he was taken into custody he was 39 years old and a heavy user of methamphetamine and was not provided any help with detoxification or with his anxiety issues.

On cross examination, Petitioner's testimony was inconsistent. He acknowledged that Skrien told him he was facing 20 years, and to do better, he would have to cooperate, but said Skrien never told him that there was an offer for 20 years without cooperation. He also testified that Skrien may have told him about a 20-year offer, but testified that he would never take any offer without seeing it. He also admitted that Skrien never told him that he had to cooperate in order to get a 20-year deal.

The last person to testify at the evidentiary hearing was Assistant United States Attorney ("AUSA") Larry H. Ferrell, the supervising AUSA. He confirmed that he initially approved a plea offer of 20 years. Prior to trial, he also approved an offer of 200 months, in exchange for foregoing the right to trial. Ferrell also testified that following the guilty verdict, but before sentencing, he advised Petitioner that he could get 25 years if he would waive his right to appeal and provide "substantial assistance" to the government by identifying his source. Ferrell made clear that Petitioner would not have to testify against anyone in order to obtain the reduction, but would only have to provide

13

information. Ferrell testified that while he knew the information might prove helpful, the real purpose of this offer was to give Petitioner a chance to avoid a life sentence. Petitioner refused, stating that "25 years was like life."

## DISCUSSION

To prevail on an ineffective-assistance-of-counsel claim, a petitioner must meet the two-prong test established by *Strickland v. Washington*, 466 U.S. 668 (1984): (1) he "must show that counsel's performance was deficient," so deficient that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," and (2) he must show "that the deficient performance prejudiced the defense," in the sense that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 690, 694.

**Counsel's Obligation to Convey a Plea Offer**

"[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 133, 141 (2012) (citation omitted). "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused" and failure to do so meets the first prong of the *Strickland* standard. *Id.* at 145; *see also Lafler v. Cooper*, 566 U.S 156, 162-63 (2012); *United States v. Strother*, 509 F. App'x 571, 575 (8th Cir. 2013) ("Defense counsel's performance is thus deficient if counsel allows a formal plea offer to expire without advising the defendant or allowing him to consider it.") (citation omitted). To

14

satisfy the second prong of *Strickland* in the context of failure to convey a plea offer, a petitioner must demonstrate a reasonable probability [he] would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel." *Id*. at 1409.

The Court's determination of Petitioner's entitlement to relief under § 2255 on this claim depends on a credibility determination. "In assessing the credibility of witnesses, the court properly may consider variations in demeanor and tone of voice, as well as documents and objective evidence that may contradict a witness' testimony or reveal inconsistencies. Additional considerations may include the witness' motive to lie and the specificity of a witness' statements." *Jackson v. United States*, No. 5:07–CR–110–FL–1, 2014 WL 7149635, at *4 (E.D.N.C. Dec. 15, 2014) (citations omitted).

The Court, having heard the testimony and reviewed the evidence at the November 23, 2015 evidentiary hearing, and having had the opportunity to observe the witnesses and their demeanor, finds that defense counsels' accounts are credible and consistent with the record as a whole, whereas Petitioner's account is not credible. The Court finds that neither Skrien nor McMenamin showed Petitioner the written November 8, 2011 plea offer. This was certainly not the best practice. However, the Court finds that both Skrien and McMenamin conveyed to Petitioner the salient terms of that offer, a 20-year sentence in exchange for a guilty plea, and that neither attorney ever suggested to Petitioner that a 20-year deal was contingent on cooperation. To the contrary, Skrien advised Petitioner that the only way to get *below 20 years* was to cooperate – and Petitioner acknowledged that Skrien told him this. The Court also credits the testimony of both defense attorneys that they discussed with Petitioner the government's offer of

15

200 months, and that they never told Petitioner that such a plea agreement required cooperation with the government.

The Court does not credit Petitioner's testimony to the extent that it conflicts with counsels' testimony. More specifically, the Court does not find credible Petitioner's testimony that Skien never conveyed to him that he could accept an offer for 20 years, and later, an offer for 200 months, without being required to cooperate. Indeed, as noted above, Petitioner testified at one point that he thought to get *less than* 20 years he would have to cooperate. Nor does the Court find credible Petitioner's testimony that McMenamin never told him an offer of 20 years (without cooperation) was on the table, or Petitioner's denial that he insisted that an acceptable offer would have to be for a sentence of seven to nine years. Moreover, the Court does not believe Petitioner's testimony that he would have accepted an offer for 20 years that did not require that he cooperate with the government. To the contrary, both counsel repeatedly attempted to convince Petitioner to consider an offer for 20 years, or even 17 years, and Petitioner refused to discuss the matter.

Lastly, the Court rejects the suggestion raised by Petitioner's counsel in the present case, that Petitioner's mental state, given his problems with anger and methamphetamine, prevented him from understanding the discussions with defense counsel about plea offers. The undisputed evidence is that Petitioner was able calmly to discuss all aspects of his case other than any suggestion that he enter a plea of 17-20 years. In sum, the Court rejects Petitioner's claim that counsel were ineffective in the plea negotiation aspect of the case. *See Strother*, 509 F. App'x at 575 (affirming the

16

rejection of a petitioner's claim, following an evidentiary hearing, that defense counsel failed to convey a plea offer).

**Motion to Suppress**

A review of the record, including the transcript of the suppression hearing, convinces the Court that Petitioner has failed to show that Skrien rendered ineffective assistance in connection with the motion to suppress evidence, and further has failed to show that but for any or all of the alleged errors by Skrien, the result of the suppression hearing would have been different. There is nothing to suggest that photographs of the vehicle, information from the Department of Motor Vehicles, or further examination regarding how the officer knew Petitioner's license was suspended would have been favorable to Petitioner or impacted the result. And as set forth in this Court's prior Order, the fact that the officer was on the lookout for Petitioner, and had already received information suggesting he was once again involved in narcotics, does not change the fact that the officer had probable cause to arrest Petitioner for the traffic offense and the outstanding warrant. *See Whren v. United States,* 517 U.S. 806, 812-13, 818-19 (1996); *United States v. Linkous*, 285 F.3d 716, 719 (8th Cir. 2002).

Further, Skrien effectively cross-examined the officer both with regard to how the officer was able to identify the driver as Petitioner, and with respect to consent to search the entire vehicle. *See Winters v. United States*, 716 F.3d 1098, 1103 (8th Cir. 2013) (holding that the district court did not abuse its discretion in denying without an evidentiary hearing the petitioner's § 2255 motion based on the assertion that counsel was ineffective for failing to call an informant, and failing to impeach the investigating

17

officers' testimony; where the petitioner made no showing in his motion that the informant was available and would have testified for the petitioner, and the record showed that the officers had reasonable suspicion justifying the stop of the petitioner's vehicle).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Dennis Ray Capps's motion filed under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence is **DENIED**.

An appropriate Judgment shall accompany this Memorandum and Order.

 

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 15th day of March, 2018.